United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JASON SMITH,

          Plaintiff,

    v.

J. MENDOZA, et al.,

          Defendants.

Case No. 19-03750 BLF (PR)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; SETTING BRIEFING SCHEDULE**

(Docket No. 23)

Plaintiff, a state prisoner at the Correctional Training Facility ("CTF"), filed the instant *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against CTF prison officials and the Chief of the Office of Appeals in Sacramento.  Dkt. No. 1.[1]  Finding the complaint stated cognizable claims, the Court ordered service upon Defendants.  Dkt. No. 3.  Defendants J. Mendoza, I. Perez-Pantoja, M. Zavala, J. Ibarra, B. Aguirre, R. Glaze, and W. Sinkovich filed a motion for summary judgment based on failure to exhaust administrative remedies, on the merits, and qualified immunity.  Dkt. No. 23.[2]  Plaintiff

---

[1] All page references herein are to the Docket pages shown in the header to each document and brief cited, unless otherwise indicated.

[2] In support of their motion, Defendants provide declarations, with exhibits, from Defendant I. Perez-Pantoja, Dkt No. 23-2; Defendant J. Mendoza, Dkt. No. 23-3; non-defendant H. Moseley (Associate Director of CDCR's Office of Appeals), Dkt. No. 23-4;

filed an opposition, Dkt. No. 36; exhibits in support of his opposition, Dkt. No. 37; and an appendix of additional exhibits, Dkt. No. 39.  Defendants filed a reply.  Dkt. No. 42.

For the reasons discussed below, Defendants' motion is **GRANTED IN PART and DENIED IN PART.**

## DISCUSSION

### I.   EVIDENCE TO BE CONSIDERED

Plaintiff asks the Court to take judicial notice of four federal lawsuits against CTF officers.  *See* Opp. at 20-22.  Plaintiff expressly requests judicial notice of these lawsuits as "character evidence."  *Id*. at 20-21.  Defendants argue that Plaintiff seeks to introduce these lawsuits for an improper purpose: to show that Defendants had a propensity to commit the wrongs of which Plaintiff complains.  *See* Reply at 8-9.

The Federal Rules of Evidence provide that "[e]vidence of any other . . .  act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  Although character evidence may be admitted "for another purpose, such as proving . . . intent . . . or lack of accident," *id*. at 404(b)(2), those elements are not at issue here.  Because no exception to the character evidence rule applies, the Court will not consider the four federal lawsuits.

Neither party challenged the admissibility of declarations and exhibits submitted along with the Motion and Opposition.  The Court sees no barriers to admissibility of these documents and will therefore consider them in their entirety.

### II.   STATEMENT OF FACTS[3]

This action is based on Plaintiff's claims that (1) he was retaliated against for threatening to report a correctional officer for watching television while on duty, and (2)

and non-defendant V. Papan (Defendants' counsel), Dkt. No. 23-5.

[3] The following facts are undisputed unless otherwise indicated.

United States District Court
Northern District of California

he was housed in a cell with no windowpanes.  *See generally*, Compl.

At the time of the alleged wrongs, Defendants I. Perez-Pantoja and J. Mendoza were floor officers at CTF in the X-wing housing unit.  Dkt. No. 23-2 ("Perez-Pantoja Decl.") ¶ 2, Dkt. No. 23-3 ("Mendoza Decl.") ¶ 2.  Defendants M. Zavala, J. Ibarra, and B. Aguirre were correctional officers at CTF in the C-wing housing unit.  Dkt. No. 23 ("Motion") at 3.  Defendant R. Glaze was the yard sergeant for Facility C.  *Id*.  Defendant W. Sinkovich was a third-level appeals examiner with the California Department of Corrections and Rehabilitations ("CDCR") Office of Appeals in Sacramento.  *Id*.

### A.    Plaintiff's interaction with Defendant Perez-Pantoja

Plaintiff alleges that on September 23, 2018, he observed Defendant Perez-Pantoja watching television while on duty.  Compl. ¶ 13.  Plaintiff alleges that he threatened to report Defendant Perez-Pantoja for violating CDCR policy, and that Defendant Perez-Pantoja responded, "I'm going to see how much contraband you have when I search your cell."  *Id*. ¶ 14.  Defendant Perez-Pantoja contends that this interaction never took place, *see* Perez-Pantoja Decl. ¶ 8, and that he did not know Plaintiff intended to file an administrative appeal until October 14, 2018, *see id*. ¶ 5.

Plaintiff alleges that on September 24, 2018, Defendant Perez-Pantoja searched Plaintiff's cell in retaliation for Plaintiff's threat on the preceding day.  Compl. ¶ 15. Plaintiff contends that during this cell search Defendant Perez-Pantoja "trashed" Plaintiff's cell, spilled coffee on a copy of a complaint that Plaintiff had filed in a pending civil rights action, and "stole" legal opinions that Plaintiff had printed out.[4]  *Id*.; *see also* Dep. at 42:19-44:9.

Defendant Perez-Pantoja agrees that he searched Plaintiff's cell on September 24, 2018.  *See* Perez-Pantoja Decl. ¶ 4.  However, Defendant Perez-Pantoja contends that the cell search was not retaliatory, but that instead Plaintiff's cell was randomly searched

---

[4] The record suggests that Plaintiff had at least four civil rights actions pending at the time of the cell search.  *See* Dep. at 132:14-23.

along with two other cells, and that the search was overseen by Defendant Perez-Pantoja's partner, non-defendant Officer Robledo. *Id*. ¶¶ 4-7. Defendant Perez-Pantoja states that he did not "trash" Plaintiff's cell, did not remove any documents from Plaintiff's cell, and did not see much less intentionally spill coffee. *See id*. Defendant Perez-Pantoja further states that "Plaintiff did not voice any objections to me or my partner about the cell search." *Id*. ¶ 4.

### B.   Plaintiff's interaction with Defendant Mendoza

Plaintiff contends that he filed a mail-related administrative appeal against Defendant Mendoza on November 15, 2018. Compl. ¶ 18. Plaintiff "subsequently informed" Defendant Mendoza that Plaintiff had filed an administrative appeal against him. *See id*. Plaintiffs contends that, in response to being told Plaintiff had filed an administrative appeal, Defendant Mendoza stated Plaintiff "[wi]ll be moving out [of the housing unit] today." *See id*. Plaintiff represents that Defendant Mendoza also referred to Plaintiff's pending administrative appeal against "his partner" Defendant Perez-Pantoja.[5] *See id*.

Defendant Mendoza represents that this interaction did not occur and that, although "Plaintiff frequently threatened to file complaints against staff," Defendant Mendoza "was not aware of his subsequent staff complaint against me until December 1, 2018." Mendoza Decl. ¶ 6.

Plaintiff contends that on November 15, 2018, Defendant Mendoza told Plaintiff to pack his belongings. Compl. ¶ 19. Plaintiff was moved to a cell in another unit, which was missing multiple windowpanes. *See id*. Plaintiff contends that Defendant Mendoza caused Plaintiff to be placed there in retaliation for Plaintiff's administrative appeal against him. *See id*.

---

[5] The Court notes that this representation conflicts with Defendant Perez-Pantoja's statement that he is partnered with non-defendant Officer Robledo, *see* Perez-Pantoja Decl. ¶¶ 4-7, and the fact that Defendants Perez-Pantoja and Mendoza are assigned to different shifts which do not overlap, *compare id*. ¶ 2 *with* Mendoza Decl. ¶¶ 2, 4.

United States District Court
Northern District of California

Defendant Mendoza agrees that Plaintiff was moved to a new cell on November 15, 2018, but responds that this move was neither Defendant Mendoza's decision nor subject to his influence.  *See* Mendoza Decl. ¶¶ 7-8.  Rather, CTF administrative officers decided that the Bulldogs, a security threat group, should all be housed in one unit.  *See id.* ¶ 7.  To accommodate the relocation of the Bulldogs, Plaintiff and five other inmates were moved to new cells.  *See id.*  Defendant Mendoza contends that he did not know to which cell Plaintiff was moved, nor did he know that this cell was missing windowpanes.  *See id.* ¶ 8.

In his Deposition, Plaintiff conceded that Defendant Mendoza does not have authority over housing assignments, *see* Dkt. No. 39, Appendix 7 ("Deposition") at 66:5-12; that Defendant Mendoza did not escort Plaintiff to his new cell, *see id.* at 62:11-24; and that Defendant Mendoza was not present when Plaintiff arrived at his new cell, *see id.* at 64:15-19.

### C.   The defective cell

Plaintiff contends that on November 15, 2018, he was moved to a cell where fourteen of twenty windowpanes were broken or missing.  Compl. ¶ 19.  Plaintiff contends that he asked Defendants Glaze, Zavala, Ibarra, and Aguirre to submit a work order to have the windowpanes replaced, or to move him to a cell with intact windows, but these Defendants refused his requests.  *See id.* ¶¶ 21, 30, 31, 36-37, 49, 52.  Plaintiff alleges that he was subjected to cold and wet weather because of the missing windowpanes.  *See id.* ¶¶ 24-25, 28-29, 32-33, 36, 38-45.  The windows were fixed on February 18, 2020.  *See* Dep. at 87:8-14.

### D.   California's framework for administrative appeals

CDCR allows inmates and parolees to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety,

5

or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). [6]  Inmates may also file administrative

appeals alleging misconduct by correctional officers.  *See id.*

"[I]n the originally submitted CDCR Form 602," the inmate must name any "issue,

information, or person . . . ."  Cal. Code Regs. tit. 15, § 3084.1.  The original appeal must

name "all staff member(s) involved" and "describe their involvement in the issue."  *Id.* at

§ 3084.2(a)(3).  "Administrative remedies [are] not [] considered exhausted relative to any

new issue, information, or person later named by the appellant that was not included in the

originally submitted CDCR Form 602 . . . ."  *Id.* at § 3084.1(b).

Under the effective regulations, there are three levels of review: first-level appeal,

second-level appeal, and third-level appeal.  *Id.* at § 3084.7.  "Administrative exhaustion

within California requires the completion of the third level of administrative review."

*Jackson v. Fong*, 870 F.3d 928, 933 (9th Cir. 2017).

### E.   Plaintiff's administrative appeals

Plaintiff has filed at least 37 administrative appeals while housed at CTF.  *See* Dep.

at 40:3-5; *see also* Dkt. No. 23-4 ("Moseley Decl."), Ex. A (administrative log of

plaintiff's administrative appeals).  Defendants contend, and Plaintiff does not dispute, that

only three of the administrative appeals that appear in CDCR's records are relevant to the

instant action.  *See* Mot. at 7 (citing administrative appeal numbers CTF-18-02875, CTF-

18-03246, and CTF-18-03431); *see also*, Opp. at 13-14 (arguing that administrative appeal

number CTF-18-03431 exhausted Plaintiff's Eighth Amendment claim).  Plaintiff argues

that the Court should also consider an administrative appeal which he represents he filed,

but which does not appear in CDCR's record of administrative appeals.  *See* Opp. at 14-15;

*see also* Compl. Ex. C (attaching administrative appeal).

---

[6] California repealed the administrative appeal regulations on June 1, 2020.  The Court
discusses the regulations effective between January 28, 2011 and June 1, 2020, which
apply here.

United States District Court
Northern District of California

### i.    Perez-Pantoja Grievance

On October 5, 2018, Plaintiff submitted administrative appeal number CTF-18-02875 ("Perez-Pantoja Grievance").  *See* Mosely Decl., Ex. B.  In this administrative appeal, Plaintiff alleged that he had expressed his intent to file an administrative appeal against Defendant Perez-Pantoja for watching television while on duty; that Defendant Perez-Pantoja said he would search Plaintiff's cell for contraband because of Plaintiff's threatened administrative appeal; and that Perez-Pantoja conducted a retaliatory cell search the next day, and "trashed" Plaintiff's cell, spilled coffee on a copy of a complaint, and stole printouts of legal cases.  *See id*.  As a remedy, Plaintiff asked to be compensated for his destroyed and stolen documents, and that Defendant Perez-Pantoja be prohibited from future retaliatory actions.  *See id*.  Plaintiff did not allege that any staff other than Defendant Perez-Pantoja had taken retaliatory action against Plaintiff.  *See id*.

The Perez-Pantoja Grievance was stamped "received" on October 9, 2018, and bypassed the first level of review.  *See id*.  The second-level reviewer reiterated Plaintiff's original administrative appeal and cautioned Plaintiff that any unrelated issues were not exhausted by the Perez-Pantoja Grievance, nor did the Perez-Pantoja Grievance exhaust any claims Plaintiff had against unnamed staff members.  An investigation was conducted, and the second-level reviewer found that staff had not violated CDCR policy.  *See id*.

On November 27, 2018, Plaintiff appealed to the third level of review.  In his appeal, Plaintiff argued that the staff interviewed during the investigation enabled Perez-Pantoja's rule-breaking; that inmate witnesses were not interviewed; and that Plaintiff had been subjected to further retaliation by being moved to a different unit.  *See id*.  Plaintiff did not allege that any staff other than Defendant Perez-Pantoja had taken retaliatory action against Plaintiff and did not mention the missing windowpanes in Plaintiff's new cell. *See id*.

At the third level of review, the third-level reviewer summarized Plaintiff's original administrative appeal and the response Plaintiff had received at the second level of review.

United States District Court
Northern District of California

*See id.*  The third-level reviewer found that the second-level response complied with departmental policy.  *See id.*  The third-level reviewer did not address the issues Plaintiff added in his appeal from the second level of review.  Instead, the third-level reviewer stated that: "The appellant has added new issues and requests to the appeal.  The additional requested action is not addressed herein as it is not appropriate to expand the appeal beyond the initial problem and the initially requested action."  *Id.*

### ii.   **Mendoza Grievances**

Plaintiff filed two administrative appeals regarding his interactions with Defendant Mendoza.

#### a.   Mendoza Mail Grievance

On November 7, 2018, Plaintiff submitted administrative appeal number CTF-18-03246 ("Mendoza Mail Grievance").  *See* Moseley Decl., Ex. C.  In the Mendoza Mail Grievance, Plaintiff accused Defendant Mendoza of "violation of mail [and] confidential medical ducats."  *Id.* (title of Mendoza Mail Grievance).  Plaintiff contended that Defendant Mendoza distributed mail by "just plac[ing] it in the doors or kick[ing] it underneath the cells with his dirty boot[]s."  *Id.*  Plaintiff contended that Defendant Mendoza's actions led to mail being stolen, and inmates' confidential information being exposed.  *See id.*  As a remedy, Plaintiff asked that Defendant Mendoza be required to adhere to mail delivery guidelines, and that Defendant Mendoza be prohibited from retaliating against Plaintiff.  *See id.*

The Mendoza Mail Grievance was stamped "received" on November 8, 2018, and bypassed the first level of review.  *See id.*  The second-level reviewer conducted an investigation and Plaintiff was interviewed on December 1, 2018.  *See id.*  Plaintiff told the interviewer that Defendant Mendoza had retaliated against Plaintiff by "mov[ing] [Plaintiff] out of X-Wing."  *Id.*  Plaintiff made no mention of any other wrongdoers or of broken windowpanes.  *See id.*  The second-level reviewer found that staff had not violated CDCR policy.  *See id.*

On January 2, 2019, Plaintiff appealed to the third level of review.  In his appeal, Plaintiff argued that Defendant Mendoza had violated policy, and that Defendant Mendoza had retaliated against Plaintiff by moving him out of X-wing.  *See id*.  Plaintiff did not allege that any staff other than Defendant Mendoza had taken retaliatory action against Plaintiff and did not mention the missing windowpanes in Plaintiff's new cell.  *See id*.

At the third level of review, the third-level reviewer summarized the original Mendoza Mail Grievance and the response Plaintiff had received at the second level of review.  *See id*.  The third-level reviewer found that the second-level response complied with departmental policy.  *See id*.  The third-level reviewer did not address Plaintiff's allegations of retaliation.  Instead, the third-level reviewer stated that: "The appellant has added new issues and requests to the appeal.  The additional requested action is not addressed herein as it is not appropriate to expand the appeal beyond the initial problem and the initially requested action."  *Id*.

### b.   Mendoza Retaliation Grievance

On November 13, 2018, Plaintiff submitted administrative appeal number CTF-18-03431 ("Mendoza Retaliation Grievance").  *See* Moseley Decl., Ex. D.  In the Mendoza Retaliation Grievance, Plaintiff accused Defendant Mendoza of violating "CCR 3391" with "retaliation."  *Id*. (title of Mendoza Retaliation Grievance).[7]  Plaintiff contended that Defendant Mendoza had caused Plaintiff to be rehoused in retaliation for Plaintiff's having filed the Mendoza Mail Grievance.  *See id*.  Plaintiff noted in passing that his new cell had "several windows missing," but did not allege that his Eighth Amendment rights had been violated, request that the windows be repaired, or claim that Defendant Mendoza was somehow responsible for repairing the windows.  *See id*.  Instead, Plaintiff expressly charged Defendant Mendoza with a "retaliatory housing move[]."  *Id*.  As a remedy,

---

[7] This code section is entitled "Employee Conduct," applies to employees of adult correctional institutions, and requires employees, *inter alia*, to be "alert, courteous, and professional in their dealings with inmates."  Cal. Code Reg. § 3391(a).

Plaintiff asked that staff be prohibited from using housing assignments to retaliate against Plaintiff, and for CTF to acknowledge that Plaintiff had been moved multiple times as retaliation for engaging in protected activity.  *See id*.

The Mendoza Retaliation Grievance was stamped "received" on November 20, 2018, and bypassed the first level of review.  *See id*.  Plaintiff was interviewed on December 11, 2018.  *See id*.  Plaintiff expressly told the interviewer that he "had nothing further to add."  *Id*.  Plaintiff made no mention of other wrongdoers, nor did Plaintiff mention his Eighth Amendment rights.  *See id*.  The second-level reviewer found that Plaintiff had been moved to accommodate the Bulldogs, and that staff had not violated CDCR policy.  *See id*.

On January 11, 2019, Plaintiff appealed to the third level of review.  In his appeal, Plaintiff argued he had been "targeted for rehousing" because of his prior administrative appeals.  *See id*.  Plaintiff also added allegations that he had asked Defendants Glaze, Aguirre, Zavala, and Ibarra to submit work orders to repair Plaintiff's windowpanes or to rehouse Plaintiff, but these defendants had refused to do so.  *See id*.  Plaintiff did not allege that Defendant Mendoza was responsible for ensuring the windowpanes in Plaintiff's cell be repaired, or for moving Plaintiff to a new cell with proper windows.  *See id*.

Defendant Sinkovich conducted the third level of review.  *See id*.  At the third level, Defendant Sinkovich summarized the original Mendoza Retaliation Grievance and the response Plaintiff had received at the second level of review.  *See id*.  Defendant Sinkovich did not address Plaintiff's newly added allegations regarding his efforts to get his windows fixed.  Instead, Defendant Sinkovich noted that Plaintiff had alleged retaliation, and that the Mendoza Retaliation Grievance had been "categorized as a mail issue."  *Id*.  Defendant Sinkovich found that the second-level response complied with departmental policy.  *See id*.

### iii.    Zavala Grievance

Plaintiff contends that he submitted an additional administrative appeal on February 10, 2019, which was not acknowledged by CTF ("Zavala Grievance").  *See* Compl., Ex. C.

United States District Court
Northern District of California

1  Defendants note that there is no evidence CTF ever received the Zavala Grievance. *See*
2  Mot. at 14-15. In his Deposition, Plaintiff alleged that he was able to attach a copy of the
3  Zavala Grievance to his Complaint because Plaintiff "always make[s] copy of my 602
4  [administrative appeals] just in case they lost or they steal it . . . ." Dep. at 37:24-38:1.

5     In the Zavala Grievance, Plaintiff accused Defendant Zavala of "deliberate
6  indifference and failure to protect from extreme cold." *See* Compl., Ex. C (title of Zavala
7  Grievance). Plaintiff alleged that Defendant Zavala had retaliated against Plaintiff for
8  engaging in protected activity, had denied a "basic human need," and had been
9  "intemperan[t]" and "inefficien[t]." *Id*. Specifically. Plaintiff alleged that he had asked
10 Defendant Zavala to rehouse him in a cell without broken windows, and she had refused.
11 *See id*. Plaintiff contended that he had been exposed to cold temperatures, and that this
12 violated the Eighth Amendment. *See id*. Plaintiff did not name any other alleged
13 wrongdoers. *See id*. As a remedy, Plaintiff requested monetary compensation. *See id*.

14    Both parties agree that CTF never acknowledged receipt of the Zavala Grievance.
15 *See* Mot. & Opp. Plaintiff represents that, when CTF failed to respond to the Zavala
16 Grievance, Plaintiff submitted two "Form 22" requests for interviews, in which Plaintiff
17 asked for a response to the Zavala Grievance. *See* Opp. at 14; *see also* Compl., Ex. C
18 (attaching two Form 22 requests). A housing unit officer signed each request as received.
19 *See id*. (showing illegible signatures); *see also* Dep. at 37:8-18 (stating these requests were
20 signed by a housing unit officer).

21    **iv.   Unrelated Grievances**

22    Defendants contend that Plaintiff submitted eight unrelated administrative appeals
23 between January 1, 2019 and May 1, 2020. *See* Mot. at 8; *see also* Moseley Decl. ¶ 13 &
24 Ex. A. Defendants represent that none of these appeals concerned the windows of
25 Plaintiff's cell, nor did they accuse Defendant Sinkovich of wrongdoing. *See id*. Plaintiff
26 does not dispute this assertion. *See generally*, Opp. Accordingly, the Court will not
27 discuss these irrelevant administrative appeals.

28                                11

### F. Plaintiff's Claims

Based on the allegations in the complaint, the Court found Plaintiff stated the following cognizable claims: (1) retaliation under the First Amendment, (2) cruel and unusual punishment under the Eighth Amendment, and (3) discriminatory treatment under the Equal Protection Clause.  Dkt. No. 3 at 3.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322-23 (1986).  A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp.*, 477 U.S. at 323.  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.  If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted.  *See Liberty Lobby*, 477 U.S. at 249-50.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citations omitted).  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Id.* at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact.  *See T.W. Elec. Serv., Inc. V. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party.  *See id.* at 631.  It is not the task of the district court to scour the record in search of a genuine issue of triable fact.  *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment.  *Id.*  If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party.  *See id.; see, e.g., Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

## IV.    ANALYSIS

Defendants argue that Plaintiff's First Amendment claims fail on the merits, and that Plaintiff's Eighth and Fourteenth Amendment claims are unexhausted.  *See generally*, Mot.  Because "the exhaustion question in PLRA cases . . . should be decided, if feasible, before reaching the merits of a prisoner's claim," *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014), the Court will discuss Plaintiff's failure to exhaust first.

### A.    Exhaustion

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and no longer left to the discretion of the district court. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). An action must be dismissed unless the prisoner exhausted his available administrative remedies *before* he or she filed suit, even if the prisoner fully exhausts while the suit is pending. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002); *see Vaden v. Summerhill*, 449 F.3d 1047, 1051 (9th Cir. 2006) (where administrative remedies are not exhausted before the prisoner sends his complaint to the court it will be dismissed even if exhaustion is completed by the time the complaint is actually filed).

Compliance with prison administrative appeal procedures is all that is required by the PLRA to "properly exhaust." *Jones v. Bock*, 549 U.S. 199, 217-18 (2007). The level of detail necessary in an administrative appeal to comply with the administrative appeal procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. *Id*. at 218. In California, the regulation requires the prisoner "to lodge his administrative complaint on CDC form 602 and 'to describe the problem and action requested.'" *Morton v. Hall*, 599 F.3d 942, 946 (9th Cir. 2010) (quoting Cal. Code Regs. tit. 15 § 3084.2(a)); *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (claim properly exhausted where inmate described nature of the wrong and identified defendant as a responding officer). As summarized above, California regulations also require that the appeal name "all staff member(s) involved" and "describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(a)(3).

Nonexhaustion under § 1997e(a) is an affirmative defense. *Jones*, 549 U.S. at 211. Defendants have the burden of raising and proving the absence of exhaustion, and inmates are not required to specifically plead or demonstrate exhaustion in their complaints. *Id.* at 215-17. Defendants must produce evidence proving failure to exhaust in a motion for summary judgment under Rule 56. *Albino*, 747 F.3d at 1166. If undisputed evidence

14

United States District Court
Northern District of California

viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. *Id.* at 1166. But if material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts in a preliminary proceeding. *Id.* The defendant's burden is to prove that there was an available administrative remedy and that the prisoner did not exhaust that available administrative remedy. *Id.* at 1172; *see id.* at 1176 (reversing district court's grant of summary judgment to defendants on issue of exhaustion because defendants did not carry their initial burden of proving their affirmative defense that there was an available administrative remedy). Once the defendant has carried that burden, the prisoner has the burden of production. *Id.* That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. *Id.* But as required by *Jones*, the ultimate burden of proof remains with the defendant. *Id.*

In the Complaint, Plaintiff alleged that his First Amendment rights were violated by Defendants Mendoza, Perez-Pantoja, Zavala, Ibarra, Aguirre, and Glaze, *see* Compl. at 17; that his Eighth Amendment rights were violated by Defendants Mendoza, Perez-Pantoja, Zavala, Ibarra, Aguirre, and Glaze, *see id.* at 17-18; and that his Fourteenth Amendment rights were violated by Defendant Sinkovich, *see id.* at 18-19. In the Opposition, Plaintiff argued that his First Amendment rights were violated by Defendants Mendoza and Perez-Pantoja only, *see* Opp. at 2; and that his Eighth and Fourteenth Amendment rights were violated by Defendants Glaze, Zavala, Aguirre, Ibarra, and Sinkovich, *see id.* Because Plaintiff has been inconsistent as to which claims are stated against which Defendants, the Court will organize its discussion of exhaustion by defendant rather than by claim.

### i.   Defendants Mendoza and Perez-Pantoja

Defendants challenge Plaintiff's First Amendment claim against Defendants Mendoza and Perez-Pantoja on the merits, and do not contend that this claim was not

exhausted. *See generally*, Mot. The Court will analyze Plaintiff's First Amendment claim as to Defendants Mendoza and Perez-Pantoja, *infra* B.ii-iii.

The Court will not analyze the merits of Plaintiff's Eighth Amendment claim against Defendants Mendoza and Perez-Pantoja, because Plaintiff appears to have dropped that claim from this action, and in any event it is unexhausted.

In the Complaint, Plaintiff alleged that his Eighth Amendment rights were violated by Defendants Mendoza, Perez-Pantoja, Zavala, Ibarra, Aguirre, and Glaze. Compl. at 17. In his Opposition to Defendants' summary judgment motion, Plaintiff dropped his Eighth Amendment claim as to Defendants Mendoza and Perez-Pantoja. *See* Opp. at 2 (naming Defendants Mendoza and Perez-Pantoja as defendants only to the First Amendment claim). Plaintiff is free to voluntarily dismiss his Eighth Amendment claim as to Defendants Mendoza and Perez-Pantoja. *See* Fed. R. Civ. P. 41(c).

Plaintiff did not exhaust an Eighth Amendment claim as to Defendants Perez-Pantoja and Mendoza. As explained above, in the Perez-Pantoja Grievance Plaintiff accused that Defendant of conducting a retaliatory cell search, "trashing" Plaintiff's cell, spilling coffee on a copy of a complaint, and stealing printouts of legal cases. *See* Moseley Decl, Ex. B. None of the allegations in the original administrative appeal link Defendant Perez-Pantoja to Plaintiff's defective cell. *See id*. Accordingly, plaintiff did not comply with California's requirement that he name all wrongdoers and raise all issues in the original administrative appeal. *See* Cal. Code Regs. tit. 15, §§ 3084.1, 3084.2(a)(3).

Plaintiff also failed to exhaust his claim as to Defendant Mendoza. In the Mendoza Mail Grievance, Plaintiff accused Defendant Mendoza of mishandling mail. *See* Moseley Decl., Ex. C. This plainly does not exhaust Plaintiff's Eighth Amendment claim.

The Mendoza Retaliation Grievance also fails to exhaust an Eighth Amendment claim as to Defendant Mendoza. The gravamen of the Mendoza Retaliation Grievance is that Defendant Mendoza retaliated against Plaintiff by moving Plaintiff to a new cell. *See* Moseley Decl., Ex. D. Plaintiff titled the administrative appeal "retaliation" and asked

16

CTF to acknowledge that Plaintiff had been retaliated against and to prohibit future retaliation. *See id*. Indeed, Plaintiff conceded in his Deposition that this administrative appeal was "concerning the retaliation." Dep. at 50:14-15. Although the Mendoza Retaliation Grievance mentioned in passing that Plaintiff's new cell was missing windowpanes, this brief reference did not change the fact that Plaintiff's complaint, and the relief sought, concerned retaliation. The Mendoza Retaliation Grievance did not allege that Defendant Mendoza was responsible for ensuring that the windows were fixed, or that it was Defendant Mendoza's fault that Plaintiff remained housed in the cell with broken windows. *See* Moseley Decl., Ex. D. Plaintiff simply did not put prison officials on notice that he believed Defendant Mendoza had violated Plaintiff's Eighth Amendment rights; rather, the Mendoza Retaliation Grievance clearly and repeatedly accused Defendant Mendoza of violating Plaintiff's First Amendment rights. *See McCollum v. California Dep't of Corr. & Rehab.*, 647 F.3d 870, 876 (9th Cir. 2011) (although administrative appeals mentioned in passing that the prison lacked a Wiccan chaplain, they did not exhaust claim because they "do not provide notice that the source of the perceived problem is the absence of a paid Wiccan chaplaincy"); *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (administrative appeal demanding better access to top bunk did not alert prison officials that officers had disregarded assignment to lower bunk); *Brown v. Johnson*, 537 F. App'x 705, 707 (9th Cir. 2013) (where administrative appeals "focused entirely on [plaintiff's] medical and housing complaints," and only in passing mentioned that plaintiff was allowed out of his cell without an escort, "that statement was simply a description of the events leading up to [plaintiff's] fall down the stairs; it was not a complaint about being let out of his cell . . . without an escort").

Accordingly, the Court GRANTS Defendants' Motion as to Plaintiff's Eighth Amendment claim as to Defendants Mendoza and Perez-Pantoja.[8]

---

[8] In any event, an Eighth Amendment claim against Defendant Mendoza would fail because Defendant Mendoza had no authority over housing decisions. *See infra* B.iii.

### ii.   Defendants Glaze, Aguirre, and Ibarra

In the Complaint, Plaintiff alleged that his First Amendment rights were violated by Defendants Mendoza, Perez-Pantoja, Zavala, Ibarra, Aguirre, and Glaze, *see* Compl. at 17; that his Eighth Amendment rights were violated by Defendants Mendoza, Perez-Pantoja, Zavala, Ibarra, Aguirre, and Glaze, *see id*. at 17-18; and that his Fourteenth Amendment rights were violated by Defendant Sinkovich, *see id*. at 18-19.  In his Opposition to Defendants' summary judgment motion, Plaintiff dropped his First Amendment claim as to Defendants Zavala, Ibarra, Aguirre, and Glaze.  *See* Opp. at 2 (naming only Defendants Mendoza and Perez-Pantoja as defendants to the First Amendment claim).  In his Opposition, Plaintiff argued that his Eighth and Fourteenth Amendment rights were violated by Defendants Glaze, Aguirre, and Ibarra.  *See id*.

The Court will not consider a Fourteenth Amendment claim against these Defendants.  Plaintiff cannot add a Fourteenth Amendment claim against these Defendants at summary judgment because Defendants did not receive "fair notice" that Plaintiff intended to bring a Fourteenth Amendment claim against these Defendants.  *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 969 (9th Cir. 2006) (affirming summary judgment where the complaint did not give fair notice of the factual basis for a claim raised for first time in opposition to summary judgment).  The Complaint states at least three times that Plaintiff holds Defendant Sinkovich responsible for "discriminatory treatment" which "violates the Equal Protection Clause of the Fourteenth Amendment."  Compl. ¶ 54; *see also id*. at 18 & ¶ 10.  At no point in the Complaint did Plaintiff indicate he wished to bring a Fourteenth Amendment claim against these Defendants, much less plead the facts necessary to support such a claim.  *See Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("[O]ur precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court.").  Plaintiff cannot add this claim in his Opposition.

18

In any event, Plaintiff did not exhaust his First, Eighth, or Fourteenth Amendment claims as to these Defendants. Plaintiff mentions Defendants Glaze, Aguirre, and Ibarra only in an upper-level appeal of the Mendoza Retaliation Grievance. *See* Moseley Decl., Ex. C. However, none of these Defendants was named as a wrongdoer "in the originally submitted CDCR Form 602" in which Plaintiff claimed he had suffered retaliation by Defendant Mendoza. Cal. Code Regs. tit. 15, § 3084.1 (2011); *see also* Moseley Decl., Ex. C. Nor did Plaintiff "describe their involvement in the issue" in the originally filed administrative appeal. Cal. Code Regs. tit. 15, § 3084.2(a)(3) (2011). Indeed, Plaintiff concedes in the Mendoza Retaliation Grievance that the allegations against Defendants Glaze, Aguirre, and Ibarra were "additional information" provided in the interview at the second level of review "on 12/11/18" – more than one month after the Mendoza Retaliation Grievance was originally filed. *See id*. Accordingly, these Defendants were "later named by the appellant," and Plaintiff did not exhaust as to them. Cal. Code Regs. tit. 15, § 3084.1(b).

Citing *Reyes v. Smith*, 810 F.3d 654, Plaintiff argues that his failure to exhaust was cured. *See* Opp. at 12. Plaintiff is incorrect.

In *Reyes v. Smith*, the Ninth Circuit found that a California inmate had exhausted a claim for deliberate indifference to a serious medical need, although his original administrative appeal failed to name all staff members involved in his case, because that claim was decided on its merits at all levels of review. *See* 810 F.3d at 656-57. The defendants in that case were members of a committee which the plaintiff blamed for his injury, and to which prison officials repeatedly referred in denying the plaintiff's administrative appeals. *See id*. at 659. Thus, prison officials could "easily identif[y]" the defendants' "involvement in the issue," even though the defendants were not named in the original administrative appeals. In addition, the prison officials "ignore[d] the procedural problem and render[ed] a decision on the merits of the grievance at each available step of the administrative process." *Id*. at 658-59.

19

The instant action is distinguishable from *Reyes* for two reasons.  First, unlike in *Reyes*, the involvement of Defendants Glaze, Aguirre, and Ibarra is not "easily identified" in the original Mendoza Retaliation Grievance.  *Id*. at 658.  Instead, the original administrative appeal named only Defendant Mendoza as having taken retaliatory actions against Plaintiff, and made it clear that those actions were taken because of Plaintiff's mail-related dispute with Defendant Mendoza.  *See* Moseley Decl., Ex. C.  This does not imply that any other Defendant was involved with Defendant Mendoza's alleged mail mishandling and decision to retaliate.  Indeed, at the third level of review Plaintiff was informed that the appeals examiner believed his complaint to be a "mail issue."  *Id*.  This demonstrates that prison officials interpreted the Mendoza Retaliation Grievance as being related to Plaintiff's mail-handling dispute with Defendant Mendoza and did not recognize any other Defendant as being involved.  Because only Defendant Mendoza was identified in the original administrative appeal, and he is the only Defendant accused of mishandling mail, the record shows that Defendants Glaze, Aguirre, and Ibarra could not have been "easily identified" in the original Mendoza Retaliation Grievance.

Second, unlike in *Reyes*, prison officials did not "opt not to enforce a procedural rule" as to Defendants Glaze, Aguirre, and Ibarra.  *Reyes,* 810 F.3d at 658.  At both the second and third levels of review, the response is confined to the allegations raised in the original Mendoza Retaliation Grievance, and Defendants Glaze, Aguirre, and Ibarra are never mentioned.  *See generally*, Moseley Decl., Ex. C.  That the Mendoza Retaliation Grievance was "categorized as a mail issue" at the third level of review further confirms that prison officials did not expand the Mendoza Retaliation Grievance beyond its original scope: an accusation that Defendant Mendoza retaliated against Plaintiff after Plaintiff complained of Defendant Mendoza's mail mishandling.  *Reyes* is thus inapposite.

Because Plaintiff never named Defendants Glaze, Aguirre, or Ibarra in an original administrative appeal, their involvement was not easily identified in the original Mendoza Retaliation Grievance and their improper addition was not ignored at later stages of

review, Plaintiff failed to exhaust as to these Defendants.  Accordingly, the Court

GRANTS Defendants' Motion as to Defendants Ibarra, Aguirre, and Glaze.

### iii.   Defendant Sinkovich

In the Complaint, Plaintiff alleged that his Fourteenth Amendment rights were

violated by Defendant Sinkovich, and his Eighth Amendment rights were violated by

Defendants Mendoza, Perez-Pantoja, Zavala, Ibarra, Aguirre, and Glaze.  Compl. at 17-18.

In the Opposition, Plaintiff attempts to add an Eighth Amendment claim as to Defendant

Sinkovich.  *See id*.

To the extent plaintiff attempts to state a new Eighth Amendment claim against

Defendant Sinkovich, the Court will not consider such a claim because Defendants did not

receive "fair notice" that Plaintiff intended to bring an Eighth Amendment claim against

Defendant Sinkovich.  *See Pickern*, 457 F.3d at 969.  The Complaint states at least three

times that Plaintiff holds Defendant Sinkovich responsible for "discriminatory treatment"

which "violates the Equal Protection Clause of the Fourteenth Amendment."  Compl. ¶ 54;

*see also id*. at 18 & ¶ 10.  At no point in the Complaint did Plaintiff indicate he wished to

bring an Eighth Amendment claim against Defendant Sinkovich, much less plead the facts

necessary to support such a claim.  *See Navajo Nation*, 535 F.3d at 1080.  Plaintiff cannot

add this claim in his Opposition.

In any event, Plaintiff failed to exhaust any claim as to Defendant Sinkovich.

Defendant Sinkovich denied the Mendoza Retaliation Grievance, but Defendant Sinkovich

is not mentioned in any administrative appeal.  It is well-settled that in order to bring a

claim against an official who reviews an administrative appeal, the inmate must separately

grieve the official's actions.  *See Cortinas v. Portillo*, 754 F. App'x 525, 527 (9th Cir.

2018) (concluding that a claim against an appeals coordinator for cancellation was not

exhausted because it was not raised in a separate administrative appeal); *McCurdy v.

Rivero*, No. 17-01043-BLF, 2018 WL 4300521, at *3, 6-7 (N.D. Cal. Sept. 10, 2018)

(plaintiff failed to exhaust a claim for improper screening where the plaintiff's original

21

administrative appeal mentioned neither the improper screening nor the screener); *cf. Brodheim v. Cry*, 584 F.3d 1262, 1266 (9th Cir. 2009) (noting that prisoner had properly exhausted administrative remedies where he had filed a new administrative appeal regarding the appeals coordinator's actions on review). Plaintiff never filed an original administrative appeal against Defendant Sinkovich, *see* Moseley Decl., Exs. B-D, and so never exhausted as to this Defendant.

Accordingly, Defendants' Motion is GRANTED as to Defendant Sinkovich.

### iv. Defendant Zavala

Plaintiff concedes that he did not exhaust his administrative remedies as to the Zavala Grievance, but contends that his failure to exhaust should be excused because Defendants rendered the administrative appeals process effectively unavailable. The Court agrees that Defendants rendered the administrative appeals process unavailable by failing to respond to the Zavala Grievance, and excuses exhaustion.

As explained above, Defendants must show that Plaintiff failed to exhaust available administrative remedies. *See Albino*, 747 F.3d at 1166, 1172, 1176. Here, Defendants met that initial burden by showing that Plaintiff did not both file an original administrative appeal on the issue of his Eighth Amendment rights, and pursue that administrative appeal through the third level of review. *See* Mot. at 12-15. The burden then shifted to Plaintiff to produce evidence that showed administrative remedies were effectively unavailable to him. *See Albino*, 747 F.3d at 1176.

Plaintiff has met his burden of production. First, Plaintiff represents that he submitted an administrative appeal dated February 10, 2019, which complained that Plaintiff's cell had broken windows, that Plaintiff had been exposed to extreme cold throughout the winter as a result of these broken windows, that Defendant Zavala had refused to rehouse Plaintiff is a cell without broken windows, and that this violated Plaintiff's Eighth Amendment rights ("Zavala Grievance"). *See* Opp. at 14-15; *see also* Comp., Ex. C. Plaintiff explains that he attempted to exhaust his administrative remedies

United States District Court
Northern District of California

by filing the Zavala Grievance, but that prison officials did not respond. *See* Opp. at 14-15; *see also* Dkt. No. 37 ("Plaintiff's Declaration") at 10-11.  A plaintiff's testimony is sufficient to carry the burden of production. *See Williams v. Paramo*, 775 F.3d 1182, 1191-92 (9th Cir. 2015) (prisoner's statements that she was thwarted from filing an administrative appeal by correctional officer who rejected her administrative appeal and refused to file her appeal of that rejection meet burden of production in showing that administrative remedies were not available to her). *See also Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 794 (9th Cir. 2018) (plaintiffs' "factual statements" that they feared retaliation for filing administrative appeals were sufficient to carry burden of production) (citing *Williams*, 775 F.3d at 1191-92); *Todd v. Johnson*, 747 F. App'x 583, 584 (9th Cir. 2019) (finding sufficient plaintiff's testimony that he had filed administrative appeals, but they were ignored); *cf. Draper v. Rosario*, 836 F.3d 1072, 1080 (9th Cir. 2016) (affirming summary judgment where plaintiff did not "provide some explanation of the kinds of 'impeding and unethical conduct' that prison officials had allegedly undertaken" to prevent plaintiff from exhausting).

Second, Plaintiff submitted evidence which corroborates his attempt to exhaust the Zavala Grievance.  Plaintiff submits copies of two "Request for Interview" forms, dated February 18, 2019 and February 26, 2019, which asked why he had received no response to the Zavala Grievance. *See* Compl., Ex. C.  Both forms bear signatures by CTF officers, indicating that they had been received by prison officials. *See id*.  This evidence shows that CTF officials were at least on notice that Plaintiff had submitted the Zavala Grievance, even if some defect in the administrative appeals system meant that the Zavala Grievance had not made its way to CTF's appeals office.  This evidence also corroborates Plaintiff's narrative regarding the Zavala Grievance.

Defendants attempt to argue that Plaintiff has not carried his burden of production.  Specifically, Defendants argue that Plaintiff has no evidence he ever submitted the Zavala Grievance, because it has no log number and Plaintiff has not shown that he placed the

Zavala Grievance in the appeals box.  *See* Mot. at 13-14.  Similarly, Defendants argue that Plaintiff's corroborating evidence is insufficient because Plaintiff does not appear to have placed the Requests for Interview in the appeals box.  *See id*. at 14.  Finally, Defendants argue that even if CTF ignored the Zavala Grievance, Plaintiff could have submitted a new administrative appeal but chose not to.  *See id*.

These arguments are not well taken.  First, Plaintiff exceeded the level of proof required by the Ninth Circuit.  The Ninth Circuit requires only a specific explanation of how the plaintiff attempted to exhaust but was prevented from doing so.  Here, not only did Plaintiff provide a specific explanation, he also provided corroborating evidence.  *See Rodriguez*, 891 F.3d at 794; *Williams*, 775 F.3d at 1191-92; *Todd*, 747 F. App'x at 584.

Second, Defendants provide no persuasive reason why the Court should not consider Plaintiff's contemporaneous corroborating evidence.  Defendants argue that Plaintiff's Request for Interview forms are insufficient to carry Plaintiff's burden, because Plaintiff did not drop those forms in an appeals box, and so there is no proof that CTF officials ever received them.  *See* Mot. at 15.  However, as noted above, these forms were signed by CTF officials.  *See* Compl., Ex. C.  Plaintiff thus provides proof that CTF was, at minimum, put on notice that Plaintiff had submitted an administrative appeal regarding the alleged violation of his Eighth Amendment rights.  That CTF officials took no further action is their fault, not Plaintiff's, and to require Plaintiff to prove the veracity of these forms or of his statements would improperly shift Defendants' ultimate burden to Plaintiff.  *See Williams*, 775 F.3d at 1192 (reaffirming that defendants bear "the ultimate burden of proof"); *see also Todd*, 747 F. App'x at 584 (assessing the credibility of the plaintiff's testimony that administrative remedies were unavailable improperly "placed the 'ultimate burden of proof' on [plaintiff], rather than the defendants, in contravention of *Albino*").

Third, the Ninth Circuit has rejected Defendants' argument that Plaintiff could simply have filed another administrative appeal when the Zavala Grievance was ignored.  *See Williams*, 775 F.3d at 1192.

United States District Court
Northern District of California

Under Ninth Circuit precedent, Plaintiff has produced evidence sufficient to show that he submitted the Zavala Grievance, but it received no response. "When prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies. In such circumstances, prison officials have 'thwart[ed] inmates from taking advantage of [the] grievance process,' making that process unavailable." *Andres v. Marshall*, 867 F.3d 1076, 1079 (9th Cir. 201 7) (citing *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016)). *Accord Todd*, 747 F. App'x at 584 (administrative remedies unavailable where administrative appeals were "ignored"); *Hedin v. Castillo*, 723 F. App'x 526, 527 (9th Cir. 2018) (noting that if the Federal Bureau of Prisons "improperly failed to process" inmate appeals exhaustion was excused); *Aytch v. Carpenter*, 689 F. App'x 858 (9th Cir. 2017) (noting that if "the prison failed to respond" to administrative appeals, then "administrative remedies were effectively unavailable"). Accordingly, exhaustion is excused as to the Zavala Grievance.

Because Defendants are not entitled to summary judgment as to Defendant Zavala on exhaustion grounds, Defendants' motion is DENIED as to Defendant Zavala.

### B.   Merits

As explained above, Plaintiff exhausted claims that Defendant Perez-Pantoja retaliated against Plaintiff; that Defendant Mendoza retaliated against Plaintiff; and that Defendant Zavala retaliated against Plaintiff and was deliberately indifferent to his human needs. *See generally*, Compl.

The Court will discuss Plaintiff's claims against Defendant Zavala first, then Plaintiff's First Amendment claim against Defendant Perez-Pantoja, and finally Plaintiff's First Amendment claim against Defendant Mendoza.

### i.   Summary judgment is denied without prejudice as to Plaintiff's First and Eighth Amendment claims against Defendant Zavala.

In the Zavala Grievance, Plaintiff appeared to raise First and Eighth Amendment claims against Defendant Zavala. Plaintiff expressly stated that he intended to "prosecute

United States District Court
Northern District of California

this Administrative Appeal against Prison Guard M. Zavala for . . . (1) Retaliation . . . ; (2) Denial of a Basic Human Need; (3) Intemperance; and (4) Inefficiency."  Moseley Decl., Ex. C.[9]  Specifically, Plaintiff contended that Defendant Zavala subjected him to the cold and wet when she refused to order his windows repaired or to move him to another cell, *see* Compl., Ex. C, and that she did this because of his dispute with Defendant Mendoza, *see id.*  The Zavala Grievance does not claim that any other Defendant is responsible for these constitutional violations, *see id.*, and so raises a claim only as to Defendant Zavala.

Defendants expressly did not address the merits of Plaintiff's claims against Defendant Zavala, relying instead on the argument that Plaintiff failed to exhaust.  *See* Mot. at 2 n.1.  Instead, Defendants asked for "leave to file a subsequent motion for summary judgment on the merits" "[i]f the Court denies Defendants' motion for summary judgment based on exhaustion grounds."  *Id.*  The Court grants Defendants' request for leave to file a subsequent motion for summary judgment as to Plaintiff's First and Eighth Amendment claims against Defendant Zavala.

### ii.  Summary judgment is denied as to the retaliation claim against Defendant Perez-Pantoja.

Plaintiff claims that Defendant Perez-Pantoja retaliated against Plaintiff for threatening to file an administrative appeal by conducting a search of Plaintiff's cell, and confiscating or destroying Plaintiff's property during the course of that search.  For the reasons below, Defendants' motion for summary judgment is denied as to Defendant Perez-Pantoja.

---

[9] Plaintiff has no standing to challenge Defendant Zavala's alleged inefficiency; that is a matter for her employer.  Nor can Plaintiff challenge Defendant Zavala's alleged "intemperance," the primary definition of which is "habitual or excessive drinking of intoxicants."  *See* Intemperance, *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/intemperance (last visited March 1, 2021).  To the extent Plaintiff intended to allege Defendant Zavala was rude to him, this does not state a claim.  *See Beaty v. Berry*, 145 F.3d 1336 (9th Cir. 1998) ("[Plaintiff's] contention that he was verbally harassed is not sufficient to state a constitutional deprivation.").

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).  *Accord Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (prisoner suing prison officials under § 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam) (same); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985) (contention that actions "arbitrary and capricious" sufficient to allege retaliation).

The prisoner must show that the type of activity he was engaged in was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest.  *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence).  Retaliatory motive may be shown by the timing of the allegedly retaliatory act and inconsistency with previous actions, as well as direct evidence.  *Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003).  However, mere speculation that defendants acted out of retaliation is not sufficient.  *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citing cases) (affirming grant of summary judgment where no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior lawsuit).

The prisoner also bears the burden of pleading and proving absence of legitimate correctional goals for the conduct of which he complains.  *Pratt*, 65 F.3d at 806.  At that point, the burden shifts to the prison official to show, by a preponderance of the evidence, that the retaliatory action was narrowly tailored to serve a legitimate penological purpose.

27

United States District Court
Northern District of California

1  *See Schroeder v. McDonald*, 55 F.3d 454, 461-62 (9th Cir. 1995) (defendants had qualified

2  immunity for their decision to transfer prisoner to preserve internal order and discipline

3  and maintain institutional security).

4  　　　Defendants did not contest that the first and third elements of a retaliation claim

5  were met.  *See generally*, Mot.  Accordingly, the Court will only discuss the second,

6  fourth, and fifth elements.

7  　　　　　　a.  Second element

8  　　　Defendants first argue that Plaintiff has failed to fulfill the second element of a

9  retaliation claim: that his protected conduct be the motivating or substantial factor for

10  Defendant Perez-Pantoja's actions.  Mot. at 11-12.  *See also Rhodes*, 408 F.3d at 567-68

11  (identifying the elements of a retaliation claim).  Defendants assert that Defendant Perez-

12  Pantoja was unaware of Plaintiff's intention to file an administrative appeal until nearly

13  three weeks after the challenged cell search, *see id*. at 11, and so the administrative appeal

14  could not have motivated the cell search.  *See also* Perez-Pantoja Decl. at ¶ 5 & Ex. B.

15  However, Plaintiff provides a witness affidavit swearing that Defendant Perez-Pantoja was

16  aware of Plaintiff's intent to file an administrative appeal the day before Defendant Perez-

17  Pantoja conducted the challenged cell search, and that Defendant Perez-Pantoja indicated

18  he would retaliate against Plaintiff during that cell search.  *See* Opp., Ex. A at ¶¶ 7-8.

19  　　　Because both Plaintiff and Defendants provide evidence to support their arguments,

20  there is a disputed fact as to when Defendant Perez-Pantoja became aware of Plaintiff's

21  intent to file an administrative appeal, and thus as to whether the administrative appeal

22  motivated the challenged cell search.  The Court cannot grant summary judgment where

23  there is a dispute of material fact.  Nor can the Court resolve the dispute herein; courts are

24  not permitted to make credibility determinations or weigh conflicting evidence at this stage

25  of litigation.  *See T.W. Elec. Serv.*, 809 F.2d at 630 (at summary judgment, the court cannot

26  make credibility determinations or weigh conflicting evidence with respect to a material

27  fact); *see also Smith v. Sublett*, 983 F.2d 1077 (9th Cir. 1993) (unpublished) (remanding

28

where district court "decide[d] a material question of fact" regarding whether a cell search was motivated by the plaintiff's First Amendment conduct).

Accordingly, the Court must deny Defendants' summary judgment motion to the extent it is based on Plaintiff's failure to fulfill the second element of a retaliation claim.

> b.   Fourth element

Defendants next argue, with no legal citation, that Plaintiff has not fulfilled the fourth element of a retaliation claim: that Defendants' actions chilled the inmate's exercise of his First Amendment rights.  Defendants argue that, because Plaintiff filed an administrative appeal against Defendant Perez-Pantoja after the cell search occurred, and went on to file additional administrative appeals, Plaintiff was not chilled.  *See* Mot. at 11.  *See also Rhodes*, 408 F.3d at 567-68 (identifying the elements of a retaliation claim).

The Ninth Circuit has expressly rejected the idea that a prisoner must "demonstrate a *total* chilling of his First Amendment rights to file grievances . . . in order to perfect a retaliation claim.  Speech can be chilled even when not completely silenced."  *Id.* at 568 (emphasis in original).  *See also Cohen v. Summervold*, 276 F. App'x 642, 643 (9th Cir. 2008) ("The fact that Cohen continued to file grievances and federal actions despite the alleged retaliation cannot be used to determine that he failed to state a claim that his First Amendment rights were chilled . . . .").  Instead, the Ninth Circuit directs courts to ask whether the alleged retaliatory acts "would chill *or* silence a person of ordinary firmness from future First Amendment activities."  *Rhodes*, 408 F.3d at 568–69 (citation omitted).

It is unclear whether a prisoner of ordinary firmness would be deterred by the events which occurred here, an issue which Defendants did not address.  *See generally*, Mot.  Two unpublished Ninth Circuit opinions suggest a cell search is unlikely to chill the exercise of First Amendment rights by a prisoner of ordinary firmness.  *See Liebb v. Woodford*, 171 F. App'x 198 (9th Cir. 2006) (affirming summary judgment where plaintiff "failed to raise a triable issue of fact of retaliation as to whether the search of his cell . . . chilled his First Amendment rights"); *Hunt v. Kramer*, 51 F. App'x 740 (9th Cir. 2002)

United States District Court
Northern District of California

(affirming summary judgment where plaintiff failed to show that an allegedly retaliatory cell search "caused him an actual injury").[10]  Were Plaintiff complaining of a cell search alone, under Ninth Circuit precedent Defendants would likely be correct that Plaintiff's First Amendment rights were not chilled.

Here, Plaintiff complains of more than a cell search; he also complains that his cell was "trashed" and that some of his property was damaged and/or stolen.  Opp., Decl. ¶ 9.  In *Rhodes,* the Ninth Circuit found a retaliation claim actionable where the prisoner alleged, among other things, that prison officials had "arbitrarily confiscated, withheld, and eventually destroyed his property" in response to his First Amendment activities.  *See* 408 F.3d at 568.  This suggests that, if Plaintiff's cell was in fact "trashed" and Plaintiff's property damaged or stolen, he may be able to demonstrate retaliation at trial.  Whether Plaintiff's cell was trashed, and his property damaged or stolen, are material questions.

The parties dispute these material questions.  Plaintiff argues in a declaration that "trashing" and property destruction and theft occurred, and Defendant Perez-Pantoja argues in a declaration that it did not.  *Compare* Opp., Decl. ¶ 9 *with* Perez-Pantoja Decl. ¶ 7.  The parties thus dispute the material fact of whether Defendant Perez-Pantoja's conduct went beyond the acceptable bounds of a cell search.  The Court cannot resolve this dispute.  *See T.W. Elec. Serv.*, 809 F.2d at 630.

Accordingly, the Court must deny Defendants' summary judgment motion to the extent it is based on Plaintiff's failure to fulfill the fourth element of a retaliation claim.

---

[10] Courts within this District have split on this question.  *Compare Wimberly v. Alician*, No. 19-CV-08316-SI, 2020 WL 1877732, at *2 (N.D. Cal. Apr. 15, 2020) ("A retaliation claim is not stated with regard to the search of Wimberly's cell by the Investigative Services Unit.  Cell searches are commonplace in prison and random cell searches are, by their very nature, unpredictable."), *with Haddix v. Burris*, No. C-12-1674-EMC, 2015 WL 1055768, at *6 (N.D. Cal. Mar. 10, 2015) ("This is a close call, but a reasonable jury could conclude that knowing that one's cell would be searched if one filed an inmate appeal would chill a person of ordinary firmness from future First Amendment activities, even in a prison unit where cell searches could be done on a random basis as well as for cause.").

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### c.  Fifth element

Defendants argue that Plaintiff cannot fulfill the fifth element of a retaliation claim because the cell search advanced a legitimate correctional goal: "to detect and control serious contraband and to maintain institution security."  Mot. at 11.

In a recent unpublished opinion, the Ninth Circuit suggested that a cell search alone "served a valid penological purpose—namely, ensuring the security of the prison by prohibiting and removing contraband," such that a plaintiff "cannot satisfy the elements of a retaliation claim."  *Anderson v. Byrne*, 827 F. App'x 642, 644 (9th Cir. 2020).  However, the Ninth Circuit did not deal with a claim that the plaintiff's property had been damaged and/or stolen during the course of the otherwise-valid search.  *See generally, id*.

As with the fourth element of a retaliation claim, this argument would seem to depend on whether Plaintiff's cell was merely searched, or was also "trashed" and Plaintiff's property damaged and/or stolen.  As explained above, the parties dispute this material fact and the Court cannot resolve this dispute.  *See T.W. Elec. Serv.*, 809 F.2d at 630.

Accordingly, the Court must deny Defendants' summary judgment motion to the extent it is based on Plaintiff's failure to fulfill the fifth element of a retaliation claim.

### d.  Qualified immunity

Defendant Perez-Pantoja argues that Plaintiff's First Amendment claim fails because Defendant Perez-Pantoja is entitled to qualified immunity.  The Court disagrees.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The rule of qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law'"; defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation.  *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S.

United States District Court
Northern District of California

335, 341 (1986)).  "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful."  *Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991).

A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *See Pearson v. Callahan*, 555 U.S. 223 (2009) (overruling the sequence of the two-part test that required determination of a deprivation first and then whether such right was clearly established, as required by *Saucier*, 533 U.S. at 194); *Henry A. v. Willden*, 678 F.3d 991, 1000 (9th Cir. 2012) (qualified immunity analysis requiring (1) determining the contours of the clearly established right at the time of the challenged conduct and (2) examining whether a reasonable official would have understood that the challenged conduct violated such right). The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case.  *See Pearson*, 555 U.S. at 236 (noting that while the *Saucier* sequence is often appropriate and beneficial, it is no longer mandatory). "[U]nder either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment," and must, as in other cases, view the evidence in the light most favorable to the nonmovant.  *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

Here, Defendants' qualified immunity argument fails for the same reasons as their arguments regarding the fourth and fifth elements of a retaliation claim.

The Ninth Circuit issued its opinion in *Rhodes* in 2005.  *See* 408 F.3d 559.  It thus was well-settled by the time of the cell search that an officer could not steal or damage a prisoner's property.  *See Morman v. Dyer*, No. 16-CV-01523-SI, 2018 WL 2412183, at *12 (N.D. Cal. May 29, 2018) ("A reasonable officer would not have thought, in 2011, that it was lawful for him to take and break an inmate's property during a cell search.") (citing

*Rhodes*, 408 F.3d at 568).  If that occurred here, Defendant Perez-Pantoja is not entitled to qualified immunity for "trashing" Plaintiff's cell and damaging or stealing Plaintiff's property.  This is a disputed fact, which the Court cannot resolve at summary judgment. *See T.W. Elec. Serv.*, 809 F.2d at 630.

Accordingly, the Court must deny Defendants' summary judgment motion to the extent it is based on the argument that Defendant Perez-Pantoja is entitled to qualified immunity.

### iii.   Summary judgment is granted as to the retaliation claim against Defendant Mendoza.

Plaintiff claims that Defendant Mendoza retaliated against Plaintiff for past administrative appeals by relocating Plaintiff to a cell without windowpanes.

Defendants argue that Plaintiff has not fulfilled the first element of a retaliation claim: that the defendant took some adverse action against the inmate.  Specifically, Defendants argue that Defendant Mendoza could not have assigned Plaintiff to the defective cell as an act of retaliation, because Defendant Mendoza had no authority over housing assignments.  *See* Mot. at 1, 6; *see also* Mendoza Decl. ¶ 7.  In deposition, Plaintiff conceded that he "didn't say Mendoza has the authority to assign inmates," but asserted his "belief" that Defendant Mendoza "got me that cell."  Dep. at 66:5-13, 67:5-10.

"Mere opinions and beliefs that [a defendant's] actions were retaliatory, based on no specific or substantial evidence, are not enough to create a genuine issue of material fact . . . ."  *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 753 n.5 (9th Cir. 2001).  *See also Crudder v. Peoria Unified Sch. Dist. No. 11*, 468 F. App'x 781, 784 (9th Cir. 2012)) (quoting *Keyser*, 265 F.3d at 753 n.5); *Thomas v. Los Rios Cmty. Coll. Dist.*, 58 F. App'x 700, 701 (9th Cir. 2003) (same).  Plaintiff produced no evidence that Defendant Mendoza had the authority to assign Plaintiff to the defective cell, *see generally*, Opp., and concedes that Defendant Mendoza lacked that authority, *see* Dep. at 66:5-13.  By contrast, Defendant Mendoza has produced evidence that he lacked such

United States District Court
Northern District of California

United States District Court
Northern District of California

authority.  *See* Mendoza Decl. ¶ 7.  Accordingly, it is undisputed that Defendant Mendoza did not have the authority to determine Plaintiff's housing assignment.  Thus, Defendant Mendoza could not have assigned Plaintiff to the defective cell in an act of retaliation.

Plaintiff makes much of his allegation that Defendant Mendoza said Plaintiff "would be rehoused" and that Plaintiff was rehoused later "the same day."  Opp. at 5.  Plaintiff conflates knowledge with authority.  That Defendant Mendoza knew Plaintiff would be rehoused, and taunted Plaintiff with that fact, does not mean Defendant Mendoza made the housing decision.  Nor is Defendant Mendoza's taunting of Plaintiff actionable by itself.  *See Beaty v. Berry*, 145 F.3d 1336 (9th Cir. 1998) ("[Plaintiff's] contention that he was verbally harassed is not sufficient to state a constitutional deprivation.").

Accordingly, the Court GRANTS Defendants' motion for summary judgment as to Plaintiff's First Amendment claim against Defendant Mendoza.[11]

### CONCLUSION

For the reasons stated above, the Court orders as follows:

1. Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

The motion is **GRANTED** with respect to all claims against Defendants Mendoza, Ibarra, Aguirre, Glaze, and Sinkovich; with respect to any Eighth or Fourteenth Amendment claims against Defendant Perez-Pantoja; and with respect to any Fourteenth Amendment claim against Defendant Zavala.

The motion is **DENIED** without prejudice with respect to Plaintiff's First and Eighth Amendment claims against Defendant Zavala.

The motion is **DENIED** with respect to Plaintiff's First Amendment claim against Defendant Perez-Pantoja.  This claim shall be referred to the Pro Se Prisoner

---

[11] As explained *supra* A.i, Plaintiff's Eighth Amendment claim against Defendant Mendoza was unexhausted.  However, if Plaintiff had exhausted his Eighth Amendment claim, it would have failed for the same reasons.

United States District Court
Northern District of California

Settlement Program for settlement proceedings after the Court adjudicates Defendants' summary judgment motion as to Defendant Zavala, or if Defendants notify the Court that the First and Eighth Amendment claims against Defendant Zavala cannot be resolved by summary judgment.

2. Pursuant to Defendants' request, the Court will allow Defendants to file a summary judgment motion as to Plaintiff's First and Eighth Amendment claims against Defendant Zavala.  Any such motion shall be filed within **fifty-six (56) days** of the date of this Order.

    a. Any motion for summary judgment shall be supported by adequate factual documentation and shall conform in all respects to Rule 56 of the Federal Rules of Civil Procedure.  Defendants are advised that summary judgment cannot be granted, nor qualified immunity found, if material facts are in dispute.  If Defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date the summary judgment motion is due.

    b. In the event Defendants file a motion for summary judgment, the Ninth Circuit has held that Plaintiff must be concurrently provided the appropriate warnings under *Rand v. Rowland*, 154 F.3d 952, 963 (9th Cir. 1998) (en banc).  *See Woods v. Carey*, 684 F.3d 934, 940 (9th Cir. 2012).

3. Plaintiff's opposition to the summary judgment motion shall be filed with the Court and served on Defendants no later than **twenty-eight (28) days** from the date Defendants' motion is filed.

    a. Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (holding party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim).

4. Defendants **shall** file a reply brief no later than **fourteen (14) days** after Plaintiff's

opposition is filed.

5. The motion shall be deemed submitted as of the date the reply brief is due.  No hearing will be held on the motion unless the Court so orders at a later date.

6. Requests for extensions of time must be filed no later than the deadline sought to be extended and must be accompanied by a showing of good cause.

**IT IS SO ORDERED.**

**Dated:  __March 10, 2021_____**

BETH LABSON FREEMAN
United States District Judge

Order Granting and Denying MSJ; Setting Briefing Schedule
PRO-SE\BLF\CR.19\03750Smith_msj.denyIPgrantIP

United States District Court
Northern District of California