1
2
3
4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    JASON SMITH,                              Case No.  19-cv-03750-BLF  (PR)

8                 Plaintiff,

9          v.                                  **ORDER DENYING DEFENDANT'S
                                               MOTION FOR SUMMARY
10   J MENDOZA, et al.,                        JUDGMENT**

11                Defendants.                  (Docket No. 52)

12

13        Plaintiff, a state prisoner proceeding *pro se*, filed this civil action pursuant to

14   42 U.S.C. § 1983, on or about June 27, 2019.  Dkt. No. 1.  The Court found the complaint,

15   liberally construed, stated cognizable claims and ordered service of the action on Defendants.

16   Dkt. No. 3.  On March 10, 2021, the Court granted in part and denied in part Defendants' motion

17   for summary judgment.  Dkt. No. 45.  The only remaining claims were First and Eighth

18   Amendment claims against Defendant Zavala, and a First Amendment claim against Defendant

19   Perez-Pantoja.  *Id*. at 34.  Defendant Zavala was permitted to file a summary judgment motion on

20   the remaining claims against her; the claim against Defendant Perez-Pantoja was to be referred to

21   settlement proceedings after the adjudication of Defendant Zavala's motion.  *Id*. at 34-35.

22        On July 19, 2021, Defendant Zavala filed the instant motion for summary judgment

23   ("Motion").  Dkt. No. 52.[1]  Plaintiff filed an opposition, Dkt. No. 61; an affidavit and exhibits in

24

25   _____

26   [1] In support of the motion, Defendant Zavala provides declarations from E. Galvan, Dkt. No. 52-1
     & 52-2; J. Trevino, Dkt. No. 52-3; and Defendant M. Zavala, Dkt. No. 52-4.  Defendant Zavala
27   also incorporates the supplemental exhibits attached to the previous motion for summary
     judgment.  *See* Dkt. No. 23.  On September 10, 2021, Defendant Zavala filed a Notice of Errata
     after learning of errors in the declarations of M. Trevino and H. Galvan and submitted amended
28   declarations, as well as a corrected version of the Motion.  *See* Dkt. No. 59-1.

United States District Court
Northern District of California

1    support of his opposition, Dkt. No. 62; and an appendix of additional exhibits, Dkt. No. 63.

2    Defendant Zavala filed a reply.  Dkt. No. 67.

3                                        **DISCUSSION**

4    **I.    STATEMENT OF FACTS**

5             A.    <u>Claims</u>

6             Plaintiff claims that he was: (1) retaliated against by Defendant Zavala for filing

7    grievances against Officers Perez-Pantoja and Mendoza; and (2) Defendant Zavala conspired with

8    other officers to house Plaintiff in a cell with no windowpanes, refused to submit work orders to

9    fix the broken windows and refused to rehouse Plaintiff in a cell with intact windows.  *See* Dkt.

10   No. 1 ("Compl.") ¶ 53.

11            Defendant Zavala counters that Plaintiff never informed her of any issues related to the

12   broken windows in his cell and that the conditions of the cell do not rise to the level of a

13   constitutional violation.  *See generally*, Mot.  Defendant Zavala also maintains that she is entitled

14   to qualified immunity.  *Id.* at 12.  Finally, Defendant Zavala argues that Plaintiff's request for

15   punitive damages must be dismissed.[2]  *Id*. at 13.

16            B.    <u>Factual Allegations</u>

17            Plaintiff alleges that on September 23, 2018, he observed Officer Perez-Pantoja watching

18   television while on duty.  Compl. ¶ 13.  As a result, Plaintiff states that he threatened to report

19   Perez-Pantoja for violating CDCR policy.  *Id*. ¶ 14.  Plaintiff also alleges that on November 15,

20   2018, he filed an administrative appeal against Officer Mendoza for his improper handling of

21   prison mail.  Compl. ¶ 18.

22            On November 15, 2018, Plaintiff was moved from X-Wing Housing Unit to C-Wing

23   Housing Unit cell #223.  *Id*. ¶ 19.  Plaintiff's cell had four walls, one of which was heated between

24   October and April, and Plaintiff's bunk was positioned 3.475 feet away from the wall emitting

25   heat.  Dkt. No. 59-1 ("Trevino Am. Decl.") ¶¶ 2, 4.  Plaintiff contends that fourteen of twenty

26

27   ───────────────
     [2] Defendant Zavala also seeks to dismiss all claims against her for monetary damages in her
28   official capacity as barred by the Eleventh Amendment.  Mot. at 13.  In his Opposition, Plaintiff
     concedes that the Eleventh Amendment bars such claims.  *See* Opp. at 1-2.

United States District Court
Northern District of California

windowpanes were broken or missing in his new cell.  Compl. ¶ 19.  As a result of the missing windowpanes, Plaintiff alleges that he was subjected to extreme cold, strong wind, and wet weather which caused him to contract a cold and endure arthritis pain over the course of fifteen months, encompassing two winters.  *See id.* ¶¶ 22-23, 27-29, 31-36, 38-45, 48-49; *see also* Dkt. No. 38-4, Ex. 7 ("Pl.'s Dep.") at 129:1-6.  The windows were fixed on February 18, 2020.  Pl.'s Dep. at 87:8-14.

Plaintiff states that on November 16, 2018, he asked Officer Glaze for an emergency work order to be submitted for the missing windowpanes to which Officer Glaze stated, "602 it, that's not my problem."  Compl. ¶ 21.  Later that day, Plaintiff contends that he requested from Defendant Zavala and Officer Aguirre to submit an emergency work order to have the windowpanes replaced, or to move Plaintiff to a cell with intact windows, but Defendant Zavala and Officer Aguirre both refused, stating: "you don't have anything coming in this Unit because you already went complaining to Sgt. R. []Glaze and J. []Mendoza got you that cell".  *Id.*  Plaintiff contends that Defendant Zavala then stated: "J. []Mendoza asked for that cell for you!"  *Id.*

Defendant Zavala counters that she did not converse with Plaintiff on November 16, 2018, or otherwise, and was not aware of any work order requests by Plaintiff pertaining to broken windows.  Dkt. No. 52-4 ("Zavala Decl.") ¶¶ 4-5.  Defendant Zavala states that had Plaintiff made such a request, she would have filled out a CDCR 2184 form and taken it to her supervising sergeant.  *Id.*

Plaintiff contends that on November 29, 2018, he attempted to place a sheet over the window to mitigate the cold temperature but was prevented from doing so by Defendant Zavala under threat of a Rules Violation Report.  Compl. ¶ 24.

Plaintiff alleges that on December 1, 2018, Defendant Zavala refused to provide him with additional blankets or sheets to mitigate the cold and wet weather.  *Id.* ¶ 25.  Defendant Zavala counters that she did not work on that day.  Zavala Decl. ¶ 6.

Plaintiff claims that on January 2, 2019, he requested to have an emergency work order submitted, or to be rehoused, to which Defendant Zavala again refused, stating: "like I told you on 11/16/2018.  After you went complaining to Sgt. R. Glaze, you don't have ANYTHING coming

1   from me!" Compl. ¶ 30. Defendant Zavala counters that she did not have a conversation with

2   Plaintiff that day and did not receive a work order request from Plaintiff to fix missing

3   windowpanes. Zavala Decl. ¶ 7.

4       Plaintiff alleges that on January 18, 2019, he asked Defendant Zavala to move him to

5   vacant cell #115, but Defendant Zavala refused. Compl. ¶ 35. Defendant Zavala responds that

6   Plaintiff did not approach her and ask to be rehoused on that date. Zavala Decl. ¶ 8.

7       Plaintiff contends that on January 24, 2019, Plaintiff again requested to be rehoused, but

8   Defendant Zavala refused. *Id*. ¶ 37. Defendant Zavala responds that Plaintiff did not approach her

9   and ask to be rehoused on that date. Zavala Decl. ¶ 9.

10      Plaintiff submitted an administrative appeal on February 10, 2019, complaining that his

11  cell had broken windows and that Defendant Zavala refused to rehouse Plaintiff. *See* Compl., Ex.

12  C.

13      Defendant Zavala maintains that Plaintiff never informed her that he was being exposed to

14  extreme cold and inclement weather because of broken windowpanes. Zavala Decl. ¶ 10.

15  Defendant Zavala also maintains that she was unaware of any grievances filed by Plaintiff against

16  Perez-Pantoja and Mendoza and that she does not have access to administrative grievances filed

17  by inmates at CTF. *Id.* ¶ 11.

18  **II.      SUMMARY JUDGMENT STANDARD**

19      Summary judgment is proper where the pleadings, discovery and affidavits show that there

20  is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

21  law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to

22  make a showing sufficient to establish the existence of an element essential to that party's case,

23  and on which that party will bear the burden of proof at trial . . . since a complete failure of proof

24  concerning an essential element of the nonmoving party's case necessarily renders all other facts

25  immaterial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it might

26  affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is

27  genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

28  party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Generally, the moving party

United States District Court
Northern District of California

4

bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citations omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Id.* at 323. The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. *See T.W. Elec. Serv., Inc. V. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id.* at 631. It is not the task of the district court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. *See id.*; *see, e.g., Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

## III.   ANALYSIS

Defendant Zavala argues that Plaintiff's First and Eighth Amendment claims fail on the merits and that she is entitled to qualified immunity.

### A.   Summary Judgment is Denied as to the Eighth Amendment Claim Against Defendant Zavala

*i.       General Standard*

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones.  *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.  *See Helling v. McKinney*, 509 U.S. 25, 31 (1993).  A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious (objective prong), *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind (subjective prong), *id.* (citing *Wilson*, 501 U.S. at 297).

*ii.       Temperature in Cell: Objective Prong*

The "Eighth Amendment guarantees adequate heating" but not necessarily a "comfortable" temperature.  *See Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996); *Wilson*, 501 U.S. at 304 ("low cell temperature at night combined with a failure to issue blankets" could constitute an Eighth Amendment violation).  "One measure of an inadequate, as opposed to merely uncomfortable, temperature is that it poses 'a substantial risk of serious harm.'"  *Graves v. Arpaio*, 623 F.3d 1043, 1049 (9th Cir. 2010) (quoting *Farmer*, 511 U.S. at 834).  Exposure to freezing or near-freezing temperatures, coupled with other deprivations, may subject an inmate to a substantial risk of serious harm.  *See Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (reversing grant of summary judgment where inmates spent as many as seventeen hours outside in subfreezing temperatures with the clothes on their backs and disputed access to blankets and coats); *Gillespie v. Civiletti*, 629 F.2d 637, 639, 642 (9th Cir. 1980) (complaints of near freezing temperatures, along with other deprivations, state a claim).  "Whether an inmate's exposure to cold temperatures constitutes an Eighth Amendment violation depends on the severity of the cold, the duration of the prisoner's exposure, the presence of an alternative means to warmth (i.e., a blanket or jacket), the efficacy of that alternative, and the presence of 'other uncomfortable conditions[.]'"  *Micenheimer v. Soto*, No. CV 13-3853-CJC JEM, 2013 WL 5217467, at *5 (C.D. Cal. Sept. 16, 2013) (quoting *Dixon v. Godinez*, 114 F.3d 640, 644 (7th Cir. 1997)).

As noted above, Defendant Zavala submits evidence that Plaintiff's cell was heated

6

United States District Court
Northern District of California

between October and April with one of the four cell walls providing heat to the cell.  Defendant also relies on Plaintiff's deposition testimony in which he stated that he received two blankets, did not request to have the heat in his cell turned up, and the broken windows were taped.  *See* Pl.'s Dep. at 105:19-25, 125:21-127:7; *see also* Dkt. No. 23-5, Ex. B ("Papan Decl.").

In opposition, Plaintiff provides an affidavit swearing that he was prevented from covering the broken windowpanes and was only permitted to place white tape over the windowpanes in October 2019, after the filing of this action.  *See* Dkt. No. 62 ("Pl.'s Aff.") ¶ 19.  He also maintains that he could not request for the heat to be turned up because it would have exposed the adjoining cell to extreme heat, and that of his two blankets, one was used to cover himself and the other was used to cover his torn mattress.  *See id*. at ¶¶ 9, 18; *see also* Pl.'s Dep. at 105:19-25.  Plaintiff also provides an hourly log of the outside air temperature during the months in which his windowpanes were broken, which shows that, at times, the temperatures dipped below 40 degrees Fahrenheit.  *See* Suppl. Ex. 2, Dkt. No. 63.  During his deposition, Plaintiff alleged that out of the twenty windowpanes, seven were completely missing, two windowpanes were broken, and the large middle windowpane, consisting of six windows, was completely gone.  Pl.'s Dep. at 91:25-92:15.  Plaintiff also explained that the tape — which he purchased from other inmates and placed on the windows himself — constantly fell off due to wind and rain.  *Id.* at 90:20-91:2.  Plaintiff alleges that the exposure to extreme cold caused him to become sick with a persistent cold, and exacerbated his arthritis pain, as evidenced by his health care service requests and medical records.  *See* Suppl. Ex. 1, Dkt. No. 63.

Plaintiff's evidence is sufficient to permit a reasonable jury to conclude that the temperatures in Plaintiff's cell were frequently near freezing.  *See Gillespie*, 629 F.2d at 642.  Furthermore, Plaintiff contends that these conditions were lengthy because they persisted for fifteen months, encompassing two winters.  *See Johnson*, 217 F.3d at 732; *see also Dixon*, 114 F.3d at 643 ("[I]t is not just the severity of the cold, but the duration of the condition, which determines whether the conditions of confinement are unconstitutional.").  Therefore, even if there was some amount of heating and two blankets in Plaintiff's cell, a reasonable juror could still conclude that Plaintiff's longstanding exposure to cold temperatures as a result of the broken windowpanes posed a substantial risk of serious harm.  *See Fields v. Junious*, No. 1:09-CV-

01771-AWI, 2012 WL 2116351, at *7 (E.D. Cal. June 11, 2012), *report and recommendation adopted*, No. 1:09-CV-01771-AWI, 2012 WL 3201689 (E.D. Cal. Aug. 3, 2012) ("in-cell exposure to "ice cold air" for over six months could rise to the level of a serious harm within the meaning of the Eighth Amendment."); *Lopez v. Adams*, No. 1:07-CV-00808-LJO, 2011 WL 219932, at *5 (E.D. Cal. Jan. 21, 2011), *report and recommendation adopted*, No. 1:07-CV-00808-LJO, 2011 WL 976465 (E.D. Cal. Mar. 17, 2011) (placement of inmate in cold cell without mattress, linens, or clothing, combined with temperatures "in the thirties" could violate Eighth Amendment.").

Defendant argues that Plaintiff's failure to request to have the heat in his cell turned up shows that he did not face a substantial risk of serious harm. Whether the failure to raise the issue of his heat undermines Plaintiff's credibility is a determination for the jury that cannot be made on summary judgment. S*ee T.W. Elec. Serv., Inc.*, 809 F.2d at 630. Further, while Plaintiff may not have filed a 22 Form requesting that the heat be turned up, Plaintiff provides evidence that he submitted at least one administrative appeal complaining about the extreme cold. *See* Compl., Ex. C.

Defendant also argues that Plaintiff's cell could not have been excessively cold because the heating in C-Wing was sufficient to heat Plaintiff's entire cell. *See* Trevino Am. Decl. ¶ 4. However, Plaintiff claims his cell was still extremely cold because the heating was insufficient to overcome the excessively cold air coming in through the many broken windowpanes. *See Lopez*, 2011 WL 219932, at *5 ("[F]eelings of cold can be experienced through one's senses.")

Finally, while the evidence shows that Plaintiff received two blankets, Plaintiff maintains the blankets were insufficient to protect him from the extreme cold, and that when he requested additional blankets or sheets, he was denied. Whether the blankets were sufficient to overcome the cold is a determination that must be left for the jury, to decide the extent to which plaintiff had alternative means of warmth and whether that was sufficient to overcome the cold. *See Micenheimer*, 2013 WL 5217467, at *5 (citing *Dixon*, 114 F.3d at 644 ).

For these reasons, Plaintiff has satisfied the first prong of a conditions of confinement claim.

           *iii.*        *Deliberate Indifference: Subjective Prong*

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

To establish his conditions-of-confinement claim, Plaintiff must also show that Defendant Zavala knew of and disregarded an excessive risk to Plaintiff's health or safety.  *Farmer*, 511 U.S. at 837.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.*  "Whether an official possessed such knowledge 'is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence ....'"  *Johnson*, 217 F.3d at 734 (quoting *Farmer*, 511 U.S. at 842).

Here, a reasonable juror could conclude that Defendant Zavala knew of the longstanding cold conditions in Plaintiff's cell and disregarded them.  It is undisputed that Defendant Zavala worked on C-Wing where Plaintiff was housed, and that her duties required her to make regular cell bar checks for the purpose of observing any structural damage and to request work repairs.  *See* Pl.'s Opp., Ex. J, Dkt. No. 62 at 56.  Plaintiff also provides an affidavit in which he alleges that he made repeated requests to Defendant Zavala asking to be rehoused or to have the windows repaired due to the extreme cold.  Pl.'s Aff. ¶¶ 10-17.  While Defendant Zavala denies those allegations, claiming that she never observed, spoke with, or refused any of Plaintiff's requests, that denial raises a disputed issue of material fact as to whether Defendant Zavala was aware of the conditions in Plaintiff's cell and his repeated requests for the problem to be resolved.  The Court cannot grant summary judgment where there is a dispute of material fact.  Nor can the Court resolve the dispute herein; courts are not permitted to make credibility determinations or weigh conflicting evidence at this stage of litigation.  *See T.W. Elec. Serv.*, 809 F.2d at 630.  Thus, viewing the evidence in Plaintiff's favor, a reasonable jury could find that Defendant Zavala knew of and disregarded the allegedly cold conditions in Plaintiff's cell.  For these reasons, Plaintiff has satisfied the second prong of a conditions of confinement claim.

### B.    Summary Judgment is Denied as to the First Amendment Claim Against Defendant Zavala

Plaintiff claims that Defendant Zavala retaliated against him for filing grievances against Officers Perez-Pantoja and Mendoza by failing to respond to Plaintiff's requests to be rehoused or submit work orders to fix the broken windows.  For the reasons below, Defendant Zavala's Motion is denied on this claim.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). *Accord Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (prisoner suing prison officials under § 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam) (same); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985) (contention that actions "arbitrary and capricious" sufficient to allege retaliation).  The prisoner must show that the type of activity he was engaged in was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest. *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence).  Retaliatory motive may be shown by the timing of the allegedly retaliatory act and inconsistency with previous actions, as well as direct evidence. *Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003).  However, mere speculation that defendants acted out of retaliation is not sufficient. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citing cases) (affirming grant of summary judgment where no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior lawsuit).

The prisoner also bears the burden of pleading and proving absence of legitimate correctional goals for the conduct of which he complains. *Pratt*, 65 F.3d at 806.  At that point, the burden shifts to the prison official to show, by a preponderance of the evidence, that the retaliatory action was narrowly tailored to serve a legitimate penological purpose. *See Schroeder v. McDonald*, 55 F.3d 454, 461-62 (9th Cir. 1995) (defendants had qualified immunity for their decision to transfer prisoner to preserve internal order and discipline and maintain institutional security).

Defendant Zavala does not address, or otherwise dispute, elements three, four and five of

the First Amendment retaliation claim. *See generally*, Mot. Accordingly, the Court will only discuss the first and second elements.

  a. First element

   Relying on the same arguments raised above, Defendant Zavala contends that she did not commit an adverse action against Plaintiff because he had two blankets, tape to cover his windows and heat in his cell. *See* Mot. at 11. However, Plaintiff provides evidence that the blankets, tape, and heat were insufficient to overcome the extreme cold which persisted for 15 months. *See generally*, Compl. As previously explained, because both Plaintiff and Defendant Zavala provide evidence to support their arguments, there is a disputed fact as to whether Plaintiff was subject to an adverse action. The Court cannot grant summary judgment where there is a dispute of material fact. *See T.W. Elec. Serv.*, *supra*, 809 F.2d at 630.

   Accordingly, the Court must deny Defendant Zavala's summary judgment motion to the extent it is based on Plaintiff's failure to fulfill the first element of a retaliation claim.

  b. Second element

   Regarding the second element of a relation claim, a plaintiff must establish that retaliatory animus was the "but-for" cause of the plaintiff's injury, "meaning that the adverse action . . . would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019). To show this element on a motion for summary judgment, a plaintiff "need only put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to [the defendant's] intent." *Brodheim*, 584 F.3d at 1271 (citation omitted).

   Defendant Zavala argues that she was unaware of Plaintiff's grievances against Officers Perez-Pantoja and Mendoza and so the grievances could not have motivated Defendant Zavala's refusal to respond to Plaintiff's requests regarding the broken windowpanes. Defendant Zavala asserts that she does not have access to inmate grievances against other officers while they are pending. Zavala Decl., ¶ 11. She also asserts that she never spoke with Officers Perez-Pantoja and Mendoza about any administrative grievances and was never made aware of Plaintiff's grievances. *Id.* Finally, Defendant Zavala states that she and Officer Mendoza work different shifts and she and Officer Perez-Pantoja work in different buildings. *Id.*

In his verified complaint, however, Plaintiff alleges that he was transferred to the cell with broken windows on November 15, the same day he filed a grievance against Officer Mendoza, and that the following day Defendant Zavala stated: "you don't have anything coming in this Unit because you already went complaining to Sgt. R. []Glaze and J. []Mendoza got you that cell", in response to his request to be rehoused or have a work order submitted.[3]  Compl., ¶¶ 18-19, 21. Plaintiff alleges that Defendant Zavala also stated: "J. []Mendoza asked for that cell for you!"  *Id*.

The Court finds that Defendant Zavala's statements, taken in the light most favorable to Plaintiff's claim of retaliation, presents a genuine dispute of material fact as to Defendant Zavala's intent in allegedly failing to respond to plaintiff's complaints regarding the broken windowpanes. *See Brodheim*, 584 F.3d at 1271.  Furthermore, the proximity between Plaintiff's grievances, his transfer to a new cell, and Defendant Zavala's statements, provide additional evidence of Defendant Zavala's retaliatory intent.  *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) ("[T]iming can properly be considered circumstantial evidence of retaliatory intent.").

The parties thus dispute the material fact of whether Defendant Zavala's actions were taken in response to Plaintiff's filing of a grievance against Officer Mendoza.  The Court cannot resolve this dispute.  *See T.W. Elec. Serv.*, 809 F.2d at 630.  Accordingly, the Court must deny Defendant Zavala's summary judgment motion to the extent it is based on Plaintiff's failure to fulfill the second element of a retaliation claim.

### C.   Qualified Immunity

Defendant Zavala argues that Plaintiff's First and Eighth Amendment claims fail because Defendant Zavala is entitled to qualified immunity.  The Court disagrees.  The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The rule of qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the

---

[3] A verified complaint may be used as an opposing affidavit, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence.  *See Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996), *amended*, 135 F.3d 1318 (9th Cir. 1998) (treating allegations in prisoner's verified amended complaint as opposing affidavit).

law'"; defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful." *Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991). A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223 (2009) (overruling the sequence of the two-part test that required determination of a deprivation first and then whether such right was clearly established, as required by *Saucier*, 533 U.S. at 194); Henry A. v. Willden, 678 F.3d 991, 1000 (9th Cir. 2012) (qualified immunity analysis requiring (1) determining the contours of the clearly established right at the time of the challenged conduct and (2) examining whether a reasonable official would have understood that the challenged conduct violated such right).

Here, Defendant Zavala's qualified immunity arguments fail for the same reasons cited above. It was clearly established at the time of the relevant events that adverse action taken against an inmate for his protected conduct without a legitimate correctional goal violates the First Amendment. *Rhodes*, 408 F.3d 567-68. It was also clearly established at the time of the relevant events that prisoners have a right to adequate heating in their cells, s*ee Keenan*, 83 F.3d at 1091; *Graves*, 623 F.3d at 1049, and that prison officials may display deliberate indifference if they know of longstanding deprivations and fail to address them, *see Farmer*, 511 U.S. at 842 (stating that, to establish a claim for deliberate indifference, an inmate may present evidence showing that a substantial risk of harm was "longstanding" and that the prison official was "exposed to information concerning the risk and thus must have known about it").

Defendant Zavala's entitlement to qualified immunity requires the Court to accept her version of the relevant events — that the heat, blankets, and tape provided to Plaintiff were sufficient to overcome the cold in plaintiff's cell — rather than Plaintiff's version of events — that the failure to fix the windowpanes or rehouse plaintiff for a period of 15 months was retaliatory.

Because resolution of these factual disputes is critical to a proper determination of Defendant Zavala's entitlement to qualified immunity, summary judgment on qualified immunity is inappropriate.

For these reasons, Defendant Zavala is not entitled to summary judgment on Plaintiff's First and Eight Amendment claims based on qualified immunity.

### D.     **Punitive Damages**

Defendant Zavala also argues that she is entitled to summary judgment on Plaintiff's claim for punitive damages because there is no evidence that Defendant acted with the necessary evil motive or intent or the necessary reckless or callous indifference to the federally protected rights of others.  Mot. at 13.  This argument requires the Court to accept Defendant Zavala's version of the relevant events.  Because there are factual disputes surrounding Plaintiff's claim of excessive cold and his requests for it to be remedied, Defendant's motion for summary judgment with respect to punitive damages is DENIED.

### CONCLUSION

For the reasons stated above, the Court orders as follows:

1. Defendant Zavala's motion for summary judgment is **DENIED.**

2. The remaining claims in this case, including a First and Eighth Amendment claim against Defendant Zavala, and a First Amendment claim against Defendant Perez-Pantoja, are REFERRED to Magistrate Judge Robert Illman for settlement proceedings pursuant to the Pro Se Prisoner Mediation Program.  Such proceedings shall take place within 120 days of the date this order is filed, or as soon thereafter as Magistrate Judge Illman's calendar will permit.  Magistrate Judge Illman shall coordinate a place, time and date for one or more settlement conferences with all interested parties and/or their representatives and, within fifteen days of the conclusion of all settlement proceedings, shall file with the Court a report thereon.

3. If the case does not settle, the Court will enter a new scheduling order for further proceedings.

This order terminates ECF No. 52.

1    **IT IS SO ORDERED.**

2    Dated: February 22, 2022

3

4    BETH LABSON FREEMAN
     United States District Judge
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15